[S.F. No. 24000. July 12, 1979.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LASSEN COUNTY, Respondent;
JOE CARL STANLEY, Real Party in Interest.

COUNSEL

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and James Ching, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Quin Denvir, State Public Defender, Ezra Hendon, Chief Assistant State Public Defender, Pardee, Henriques & Hill and Robert K. Hill for Real Party in Interest.

OPINION

BIRD, C. J.—This court must decide whether the prosecution may petition for a writ of mandate to vacate a trial court order granting an accused's motion for a change of venue.

I

Real party in interest, Joe Carl Stanley, was charged with possession of a sharp instrument while confined in a state prison. (Pen. Code, § 4502.) This offense allegedly occurred on May 9, 1978, at the California Correctional Center (Center) in Susanville, during a series of racial disturbances. These disturbances were reported locally in the Lassen Advocate. The articles were brief and factual. No mention was made of real party or his alleged offense.

Shortly thereafter, a lengthy article in the Sacramento Bee[1] charged that the prison's troubles were due to a small group of "racist" and "neo-nazi" prison employees. The article implied that Susanville and Lassen County were an isolated pocket of racism.[2] The article prompted a

---

[1] The Bee has a circulation of 1,166 in Susanville, and 1,758 in Lassen County. Lassen County has a population of approximately 18,500, 46th in size among this state's 58 counties. Susanville has one newspaper, the Advocate, and one radio station, KSUE. The Center provides a major source of employment in the community, with over 340 employees.

[2] The article quoted a state prison official's description of the Center as "a white institution in a white community," a place with "no community for minorities." The

sharp community response. The Advocate reported the formation of a "Truth Committee" to rebut the article's charges, saying the committee had the "full support of the superintendent and staff" of the Center. The local radio station broadcast interviews with the town mayor and the chairman of the county board of supervisors, who denied the charge of community racism. They contended that the Bee article slurred the community and was motivated by government officials in Sacramento who wanted to close the prison.

Real party moved for a change of venue based on this prejudicial pretrial publicity. The district attorney argued that the articles and radio interviews did not refer directly to real party and therefore no prejudice was shown. The trial court responded that "a community's reputation is . . . very relevant in that [it] may affect local jurors; understandably sensitive to community reputation, local jurors will feel the sense of community involvement transcending their judicial function. [¶] There is a danger that that external factor . . . will influence the trial, despite honest efforts to eradicate it."

The trial court granted the motion for a change of venue on the following grounds: "I do not believe this is a racist community, but when you get a massive outpouring of publicity in the commercial news media, and a potential intrusion of community involvement, external to the judicial process, as you have in this case, there may be created a reasonable likelihood for an unfair trial . . . and that's exactly what we're up against." The trial was transferred by the court to Butte County, 125 miles away. The prosecution seeks a writ of mandate from this court to vacate the trial court's order granting this change of venue.

## II

■ If the prosecution has not been granted by statute a right to appeal,[3] review of any alleged error may be sought by a petition for writ

Director of the Department of Corrections was quoted as saying: "I would be foolish . . . to deny [the Center] is not worse [sic] than others. Racism permeates the institution." The department's human relations director, a black woman who was formerly a correctional officer, said the Center is "one of the most racist institutions in the state," a place where "people are out front with their racial slurs." The article detailed the death threats made against the prison superintendent (a Mexican-American), minority employees, and employees who appeared to support affirmative action hiring policies. A correctional sergeant said that "because of our location, we have considerable difficulty recruiting and training blacks. . . . Black staff are reluctant to bring their families here." The article said it was a "fact that [the superintendent's] wife has trouble cashing checks at the bank."

[3]The state does not contend that an appeal lies in the present case. It is readily apparent that there is no appeal under Penal Code section 1238. It provides in pertinent part: "(a)

of mandate *only* when a trial court has acted in excess of its jurisdiction and the need for such review outweighs the risk of harassment of the accused. (*People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491, 499-501 [72 Cal.Rptr. 330, 446 P.2d 138]; *People* v. *Superior Court (Edmonds)* (1971) 4 Cal.3d 605, 608-609 [94 Cal.Rptr. 250, 483 P.2d 1202]; *People* v. *Superior Court (Levy)* (1976) 18 Cal.3d 248, 251-252 [133 Cal.Rptr. 624, 555 P.2d 633]; *People* v. *Drake* (1977) 19 Cal.3d 749, 758-759 [139 Cal.Rptr. 720, 566 P.2d 622].) Mandate is not available to the prosecution for review of "ordinary judicial error" (*People* v. *Krivda* (1971) 5 Cal.3d 357, 364, fn. 5 [96 Cal.Rptr. 62, 486 P.2d 1262]) or even "egregiously erroneous" orders (*People* v. *Valenti* (1957) 49 Cal.2d 199, 204 [316 P.2d 633]; *People* v. *Superior Court (Howard), supra,* 69 Cal.2d at p. 498) when the order or ruling "on its face is a timely exercise of a well-established statutory power of trial courts . . . from which no appeal is provided in section 1238." (*People* v. *Drake, supra,* 19 Cal.3d at p. 759.) Were the rule otherwise, " 'the People [would have] the very appeal which the Legislature has denied to them. [Citations.]' " (*Ibid.*)

■ Since there is no right to appeal in the present case, this court must determine whether the prosecution may bring a writ of mandate against the trial court. Section 1033[4] provides explicit statutory authorization for a trial court to order a change of venue. In this case, the trial court reviewed the relevant judicial precedents and found that there was a reasonable likelihood that a fair and impartial trial could not be held in Lassen County. This finding obligated the trial court to order a change of venue. (§ 1033; *Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 383-384 [66 Cal.Rptr. 724, 438 P.2d 372].) The prosecution challenges the decision of the trial court rather than its authority to order the change of venue. This is an impermissible challenge to "ordinary judicial error" for which mandate does not lie.

An appeal may be taken by the people from any of the following: [¶] (1) An order setting aside the indictment, information, or complaint. [¶] (2) A judgment for the defendant on a demurrer to the indictment, accusation, or information. [¶] (3) An order granting a new trial. [¶] (4) An order arresting judgment. [¶] (5) An order made after judgment, affecting the substantial rights of the people. [¶] (6) An order modifying the verdict or finding by reducing the degree of the offense or the punishment imposed or modifying the offense to a lesser offense. [¶] (7) An order dismissing the case prior to trial made upon motion of the court pursuant to Section 1385 whenever such order is based upon an order granting defendant's motion to return or suppress property or evidence made at a special hearing as provided in this code. [¶] (8) An order or judgment dismissing or otherwise terminating the action before the defendant has been placed in jeopardy or where the defendant has waived jeopardy."
 Unless otherwise indicated, all statutory references are to the Penal Code.
 [4]Section 1033 provides in pertinent part: "In a criminal action pending in the superior court, the court shall order a change in venue: [¶] (a) On motion of the defendant, to

The prosecution's reliance on *People* v. *Superior Court (Thompson)* (1971) 16 Cal.App.3d 811 [94 Cal.Rptr. 342] is misplaced. In that case, the trial court granted a change of venue despite its expressed belief that the action was unnecessary. In effect, it abdicated its duty to exercise discretion and instead left to the higher courts the determination as to whether or not a venue change was actually necessary. (*Id.,* at p. 818.) ██ Such conduct was plainly in excess of that court's jurisdiction because the court failed to act as a court at all.[5]

Code of Civil Procedure sections 400, 1085 et seq., and 1102 et seq.[6] do not advance the prosecution's argument either. First, Code of Civil Procedure section 400 applies only to *civil* cases. There is no corresponding provision in the Penal Code. Absent compelling reasons for doing so,[7] this court should not provide for a writ proceeding not authorized by the Legislature. To do otherwise would result in a total repudiation of the principles recognized in *Howard* and followed in *Edmonds, Levy,* and *Drake.* ██ "The restriction on the People's right to appeal is not merely a procedural limitation allocating appellate review between direct appeals and extraordinary writs but is a substantive limitation on review of trial court determinations in criminal trials." (*People* v. *Superior Court (Howard), supra,* 69 Cal.2d at p. 498.)

---

another county when it appears that there is a reasonable likelihood that a fair and impartial trial cannot be had in the county."

[5]The *Thompson* court, however, asserted that mandate was automatically available because the prosecution was obligated to resist a defense motion for change of venue. (16 Cal.App.3d at pp. 814-815.) This reasoning is erroneous. The prosecution is under no obligation to resist a change of venue. It may voluntarily agree that a change of venue is necessary due to prejudicial pretrial publicity or other factors. Even if there were an obligation to resist a change of venue, it does not follow that mandate automatically lies. "[A]lthough the People may . . . suffer a wrong without a remedy, the extension of review beyond the limits which the Legislature has deemed appropriate [in § 1238] is not warranted where the trial court has not exceeded its jurisdiction." (*People* v. *Superior Court (Howard), supra,* 69 Cal.2d at p. 499.)

To the extent that *Thompson* is inconsistent with the views expressed herein, it is disapproved.

[6]Code of Civil Procedure section 400 provides that a party aggrieved by a superior court order granting or denying a motion to change the place of trial may petition the Court of Appeal for a writ of mandate "requiring trial of the case in the proper court." Sections 1085 et seq. and 1102 et seq. provide generally for the issuance of writs of mandate and prohibition, respectively.

[7]See, e.g., *Maine* v. *Superior Court, supra,* 68 Cal.2d at pages 378-381. In *Maine,* this court set forth the considerations of fairness to the accused and conservation of judicial resources as compelling reasons for making mandate available to the accused to challenge a denial of his motion for change of venue.

If the Legislature should decide to provide for mandate review in the present circumstances, it may do so through enactment of an appropriate statute. (Cf. Stats. 1978, ch. 1359, § 2, providing the prosecution with the appeal denied to it in *Drake.*) However, the Legislature has concluded that once a trial court has found that a change of venue is required, the most efficient use of the prosecution's resources is for the prosecution to accept the transfer to the new venue. Extended litigation over the place of trial may result in long delays and may well be more costly than simply accepting the new site for trial. If mandate were available to the prosecution after a trial court has ordered a change in venue, it might impinge on an accused's right to a speedy trial and might, in certain circumstances, lead to the possibility of harassment. (Cf. *People* v. *Superior Court (Howard), supra,* 69 Cal.2d at p. 501.)

In enacting section 1033, the Legislature determined that the prosecution's interest in having a trial held in the county where an offense was committed (§ 777) must yield if there is a reasonable likelihood that the accused cannot receive a fair trial. It must be presumed that every county will afford the prosecution a fair trial. Absent the highly unusual circumstances in *Thompson, supra,* 16 Cal.App.3d 811, the issues presented by an order of the trial court granting an accused's motion for change of venue do not warrant the creation of a special remedy for the prosecution if the Legislature has refused to give one.

The alternative writ of mandate is discharged and the petition for a writ of mandate is denied.

Tobriner, J., Mosk, J., Richardson, J., Manuel, J., and Newman, J., concurred.